IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Anthony Scott Vincent, #329042,<br><br>Plaintiff,<br><br>vs.<br><br>Barry Faile; Larry Deason[1]; and Debbie Horne,<br><br>Defendants. | ) | C/A No.: 1:17-889-BHH-SVH<br><br>REPORT AND RECOMMENDATION |

Anthony Scott Vincent ("Plaintiff"), proceeding pro se and in forma pauperis, filed this action pursuant to 42 U.S.C. § 1983, alleging his Eighth Amendment rights were violated while he was in pretrial detention for 17 days at the Lancaster County Detention Center ("LCDC") in the custody of the South Carolina Department of Corrections ("SCDC"). He sues Barry Faile, Sheriff of Lancaster County; Larry Deason, LCDC Captain of Corrections; and Debbie Horne, LCDC Jail Administrator ("Defendants"), claiming they failed to provide medical care. [ECF No. 1].

This matter comes before the court on Defendants' motion for summary judgment [ECF No. 27]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 28]. The motion having been fully briefed [ECF Nos. 30, 31], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule

[1] Defendant notes that Plaintiff misidentifies Captain Larry Deason in the Complaint as Larry Deese. [ECF No. 27-1 fn1]. The Clerk is directed to correct the error.

73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the record in this case, the undersigned recommends the district judge grant Defendants' motion.

I. Factual Background

Plaintiff was detained at LCDC from June 3–20, 2016. [ECF No. 27-12 at 3–4 (Booking Card)]. He alleges that during his LCDC detention, he suffered multiple seizure events and swallowed razor blades and that he was not provided proper medical attention. [ECF No. 1 at 6–10]. Plaintiff also claims he was improperly placed in a restraint chair and in a rubber room.

B. Plaintiff's Medical and Detention Records

In his two-page response [ECF No. 30], Plaintiff does not dispute the medical and detention records described in Defendants' motion and repeated below.

On June 3, 2016, Plaintiff stated he felt threatened by another inmate and was moved to a similar cell. [ECF No. 27-12 (Incident Report)].

On June 5, 2016, Plaintiff reported to LCDC officers that he had fallen in the shower. Plaintiff was examined by medical and cleared to return to his cell. *Id.* at 30 (Incident Report), 15 (Medical Note).

Also on June 5, 2016, Plaintiff complained to LCDC officers that he was having chest pains. Plaintiff was examined by a nurse and cleared to return to his cell. *Id.* at 32 (Incident Report). Plaintiff again complained of chest pains after medical personnel had left for the day. *Id.* LCDC officers recorded Plaintiff's vitals and reported the information to medical personnel on-call. *Id.* Medical advised that Plaintiff was stable and would be

checked when medical returned. *Id.* Plaintiff was checked on every 15 minutes during rounds and monitored from the front desk. *Id.*

On June 6, 2016, Plaintiff called up to the monitor and was observed to lie down on the floor after pressing the button. *Id.* at 34. Plaintiff reported to the officers that he had “blacked out.” *Id.* Even though the LCDC officer’s view on the cell monitor did not support his complaint, Plaintiff was still taken to medical for evaluation. *Id.* Medical cleared Plaintiff to return to his cell. *Id.*

On June 7, 2016, Plaintiff was charged with disorderly conduct after lying to officers, threatening officers, and creating a disturbance. *Id.* at 36. The charge was upheld after a hearing. *Id.* at 38.

On June 8, 2016, Plaintiff again reported that he had fallen in the shower. *Id.* at 40. Plaintiff was evaluated by medical, given an ice pack, and cleared to return to his cell. *Id.* Later, after medical personnel had left for the day, Plaintiff complained that he was shaking and throwing up. *Id.* LCDC officers recorded Plaintiff’s vitals, contacted the on-call medical personnel, who advised that Plaintiff did not need immediate care, but should be transferred to the padded Special Management Room (“SMR”) for his own protection because he kept falling. *Id.* Plaintiff was then transferred to the SMR. *Id.*

On June 9, 2016, Plaintiff complained that his chest hurt and that he needed something to eat or he would have a seizure. *Id.* at 44. Medical personnel had left for the day, but LCDC officers recorded Plaintiff’s vitals and contacted the on-call medical personnel. *Id.* Medical advised that Plaintiff was fine and would be seen when they returned. *Id.* Plaintiff was placed on a 15-minute watch. *Id.*

Later on June 9, 2016, Plaintiff was observed lying on the floor of his cell shaking. *See* Horne Aff. ¶ 20. The nurse examined Plaintiff and determined no treatment was required. *Id.*, ECF No. 27-12 at 15.

On June 10, 2016, Plaintiff was observed having a possible seizure in his room. ECF No. 27-12 at 46. Medical personnel were called to the cell, and Plaintiff's vitals were checked. *Id.* Plaintiff was escorted to medical for further evaluation. *Id.* Medical could not find any acute problems, and Plaintiff was cleared to return to his cell. *Id.*

Later on June 10, 2016, after medical had left for the day, Plaintiff complained that he was having a seizure and that his throat was closing up. *Id.* at 50. Plaintiff was escorted to the medical station where his vitals were checked and on-call medical personnel were contacted. *Id.* LCDC officers were advised by medical that Plaintiff was fine and would be checked when medical returned. *Id.*

On June 11, 2016, Plaintiff stated to LCDC officers that he needed them to call his bondsman and he thought he was about to have a seizure. *Id.* at 52. He was then observed falling to the floor and shaking as if he were having a seizure. *Id.* He was seen by medical personnel in his cell, his vitals were recorded, and medical determined that he was fine. *Id.* Plaintiff was placed on a 15-minute watch. *Id.*

On June 15, 2016, LCDC officers observed Plaintiff roll off his bed and begin to shake. *Id.* at 54. Medical personnel responded to Plaintiff's cell, examined him, and determined he did not need further treatment. *Id.*

On June 16, 2016, LCDC officers were alerted that Plaintiff was planning on "popping" the sprinkler in his cell and attempting to escape when officers entered. *Id.* at

56. Plaintiff was subsequently observed on the monitor trying to pop the sprinkler with a ripped sheet, and LCDC officers entered the cell and attempted to restrain the Plaintiff. *Id.* While Plaintiff was being restrained, he started shaking. Medical was called to the cell and applied an ammonia packet to Plaintiff's nostrils, and then he stopped shaking. Medical personnel cleared Plaintiff to be placed in a restraint chair. Medical personnel oversaw the Plaintiff's placement in the chair, and checked his restraints for circulation. *Id.* at 56–62. Plaintiff was placed on suicide watch, which includes removal of all belongings from the cell. *Id.* Plaintiff was placed on a 15-minute watch. *Id.*

Later that evening, after Plaintiff had been released from the restraint chair, and medical personnel had left for the day, Plaintiff placed feces on the window to his cell and stated that he had eaten feces and swallowed a razor blade. *Id.* at 66. Although Plaintiff did not have access to razor blades as a result of being on suicide watch, LCDC officers contacted medical, who approved Plaintiff's placement in a restraint chair to prevent him from causing harm to himself or others and damaging the facility. *Id.* While being restrained, Plaintiff resisted and confessed that he had not actually swallowed any razor blades. *Id.* Plaintiff was placed in the restraint chair. *Id.* at 66.

Later, after he was removed from the restraint chair, during the early morning hours of June 17, 2016, Plaintiff complained of having chest pains. *Id.* at 70. LCDC officers recorded Plaintiff's vitals and contacted the on-call medical personnel. *Id.* Medical advised that Plaintiff was stable and would be examined when they returned. *Id.*

Prior to medical personnel arriving on the morning of June 17, 2016, Plaintiff was observed sitting on the floor, then lying on the floor and shaking. *Id.* at 72. LCDC

officers responded to his cell and applied an ammonia packet to his nostrils. *Id.* Officers then recorded his vitals and contacted medical personnel, who stated that Plaintiff was fine and would be checked upon medical's arrival in the morning. *Id.*

Plaintiff was seen by medical personnel upon their arrival that morning regarding his complaint that he had eaten razor blades. *Id.* at 17. Medical noted no signs that Plaintiff had actually eaten a razor blade, concluded that he had not done so, and required no further treatment. *Id.*

Later on June 17, 2016, Plaintiff covered the camera in his cell with fecal matter. *Id.* at 74. While LCDC officers were cleaning the camera, Plaintiff stated that he was going to have a seizure, then lied down on the floor and started shaking. *Id.* Medical personnel were called, evaluated Plaintiff, and advised he was not having a seizure and did not need any medical treatment. *Id.*

Also on June 17, 2016, Plaintiff complained that his heart hurt. *Id.* at 76. LCDC officers responded and recorded his vitals. *Id.* Medical personnel had left for the day, but LCDC officers recorded Plaintiff's vitals and contacted the on-call medical personnel. *Id.* Medical advised that Plaintiff was fine and would be seen when they arrived in the morning. *Id.*

On June 18, 2016, Plaintiff again complained of chest pains. *Id.* at 78. Medical personnel arrived at his cell, recorded his vitals, and advised he was fine and did not need further treatment. *Id.*, 16.

Later on June 18, 2016, Plaintiff again complained of chest pains. *Id.* at 80. Medical personnel had left for the day, so LCDC officers recorded Plaintiff's vitals and

reported to the on-call nurse. *Id.* Medical stated Plaintiff was fine and would be evaluated in the morning. *Id.*

On June 20, 2016, Plaintiff was transferred to SCDC. *Id.* at 3.

## II. Discussion

### A. Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C. Analysis

1. Exhaustion of Administrative Remedies

Defendants contend that they are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524.

Plaintiff was detained at LCDC for only 17 days, and he alleges that he was confined in a "mental health cell (rubber room)" for the duration of the events he complains of. [ECF No. 1 at 14]. He argues that as a result of his placement, he had no access to writing materials. *Id.* The undersigned declines to recommend judgment be rendered against Plaintiff due to his failure to exhaust the administrative remedies while at LCDC.

2. Deliberate Indifference to Plaintiff's Serious Medical Needs

Plaintiff's main complaint is that Defendants were deliberately indifferent to his serious medical needs. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments that "involve the unnecessary and wanton infliction of pain." *Id.* at 103 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation. *Id.* at 105–06.

The Fourth Circuit also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly

incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Sosebee v. Murphy*, 797 F.2d 179, 182–83 (4th Cir. 1986).

Plaintiff appears to disagree with the type and amount of medical care he received while at LCDC. [ECF No. 30 at 1]. Specifically, he claims that he "should have been thoroughly evaluated for his seizure condition, which requires CT scans, MRI scans, and/or EEG (electroencephalography), along with other diagnostics." *Id.* He states that "once it was determined Plaintiff did in fact suffer legitimate seizures, he should have been placed on seizure medication." *Id.* at 2.

While the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326, 330 n. 2 (S.D. Ga. 1994). The Constitution requires that prisoners be provided with a certain minimum level of medical treatment, but it does not guarantee to a prisoner the treatment of his choice. *Thomas v. Anderson City Jail*, No. 6:10-3270-RMG-KFM, 2011 WL 442053, at *3 (D.S.C. Jan. 19, 2011)*; Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The fact that Plaintiff disagrees with the course of his medical treatment is insufficient to establish medical indifference. See *Thomas*, 2011 WL 442053 at *3*; Jackson*, 846 F.2d at 817. Plaintiff has not shown that the medical treatment he received

was so grossly incompetent or inadequate as to shock the conscience. Therefore, the undersigned recommends that Defendants be granted summary judgment.[2]

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the court grant Defendants' motion for summary judgment [ECF No. 27].

IT IS SO RECOMMENDED.

November 15, 2017
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

[2] In their motion, Defendants liberally construed Plaintiff's complaint to allege claims concerning the use of a restraint chair and his placement in the SMR, or "rubber room." [ECF No. 27-1 at 17–23]. Plaintiff did not respond to the arguments about these claims in his response to the summary judgment motion. Therefore, the undersigned does not address them, but recommends Defendants be granted summary judgment on them to the extent that Plaintiff intended to assert any such claims.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).